RONALD TRACY et al., Respondents, v. PARAGON CONTACT LENS LABORATORIES, INC., Appellant.

Third Department, May 23, 1974.

*Pearis, Resseguie, Hogan & Kline* (*Richard A. Barber* of counsel), for appellant.

*Robert L. Miller* for respondents.

GREENBLOTT, J.   This is an appeal from an order of the Supreme Court at Special Term, entered February 26, 1973 in Tioga County, which denied defendant's motion to dismiss the complaint because of lack of personal jurisdiction over the defendant.

Defendant Paragon Contact Lens Laboratories, Inc. is a Louisiana corporation with its offices in that State.   Its business is supplying contact lenses to registered optometrists and physicians; it has no contact with patients, the ultimate users of its product.   Approximately 15%[1] of its business is interstate, primarily in Alabama, Mississippi and Pennsylvania, but defendant does no business in New York.   It has not directly supplied its product to any optometrist or physician in the State, it does not solicit business or engage in a persistent course of conduct within the State, and it does not derive any revenue from goods sold within the State.

The plaintiff Nancy Jo Tracy[2] is and apparently at all pertinent times was a resident of the Village of Waverly in Tioga County, New York.   The Guthrie Clinic is a physicians' association affiliated with the Robert Packer Hospital, located in Sayre in Bradford County, Pennsylvania.   Waverly and Sayre are adjacent communities, lying on opposite sides of the New York-Pennsylvania border.   On or about May 15, 1968, Nancy Jo Tracy was fitted by a member of the staff of Guthrie Clinic for a pair of contact lenses allegedly manufactured by defendant. Defendant's moving papers indicate that it received an order for these lenses on June 17, 1968, and that it sent the lenses to Guthrie Clinic on July 19, 1968, without any indication of whom they were for or that they were to be used by a New York resident.

On or about June 15, 1969, the lens which Nancy Jo Tracy was wearing in her right eye allegedly broke into pieces, causing serious and permanent injuries to the eye.   This action to

---

1. Accepting as true the assertion to that effect in defendant's motion papers.

2. Nancy Jo Tracy was an infant at the time this action was commenced, wherefore it was commenced by her husband, Ronald Tracy, on her behalf.   However, since they were unmarried at the time the cause of action arose, no claim is made for loss of services or medical expenses.

recover damages for injury to the eye, based on defendant's alleged negligence and breach of warranty, was commenced on or about May 9, 1972 by personal service of a summons on defendant at its headquarters in New Orleans. Following service of the complaint, defendant moved to dismiss on the ground that the court did not have personal jurisdiction of the defendant (CPLR 3211, subd. [a], par. 8). Defendant's appeal is taken from the order denying said motion.

Inasmuch as defendant does no business whatsoever in this State, the only provision of our long-arm statute (CPLR 302), pursuant to which jurisdiction might be invoked, is so much of paragraph 3 of subdivision (a), which permits the exercise of personal jurisdiction over a nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state * * * if he * * * [ii] expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." This provision was enacted in 1966 as an amendment to CPLR 302 in an attempt to fill a gap demonstrated by the decision in *Feathers* v. *McLucas* (15 N Y 2d 443). There, an action was brought in New York to recover for personal injuries and property damage sustained by an explosion in New York of a tractor-drawn tank containing propane gas. The tank had been manufactured in Kansas by the defendant, a foreign corporation with nationwide sales of steel products, and had been sold to a Missouri corporation "presumably with knowledge that the latter would mount the tank on a wheelbase and then sell it to * * * a Pennsylvania corporation, which operated as a licensed interstate carrier in Pennsylvania and several other states, including New York" (15 N Y 2d, at p. 458). In holding that there was no jurisdiction under the long-arm statute as then in effect, the Court of Appeals stated: "If, in fact, the Legislature of this State had intended to confer jurisdiction on the strength of injurious forum consequences alone, without regard to the locus of the commission of the tortious act itself, it would presumably have used language appropriate to reflect such a design." (15 N Y 2d, at p. 461.) In the Report of the Judicial Conference to the 1966 Legislature in Relation to the Civil Practice Law and Rules it is stated that "the requirement of reasonable expectation of potential forum consequences would be satisfied if the foreign corporation which manufactured the defective gas tank knew that it was intended for use in New York" (Twelfth Annual Report of N. Y. Judicial Conference, 1967, p. 344). This view was in conformity with

458

the precept that amendment of CPLR 302 should be "broad enough to protect New York residents yet not so broad as to burden unfairly non-residents whose connection with the state is remote and who could not reasonably be expected to foresee that their acts outside of New York could have harmful consequences in New York" (Report at p. 342).[3]

While we do not believe that the statute requires the defendant to foresee specific consequences in New York of its allegedly tortious act, it still must be found that the presence of defendant's product in New York with some potential consequence was reasonably foreseeable rather than fortuitous. While plaintiff avers, upon information and belief, that defendant knew "that its contact lenses dispensed through the Robert Packer Hospital, located on the New York-Pennsylvania border, would be used by and purchased by residents of the State of New York", defendant denies "knowledge or expectation" that its lenses might be used by a New Yorker. The trial court obviously knew the location of Sayre, Pennsylvania in relation to New York, and that the Robert Packer Hospital treated many New Yorkers, but his knowledge is not determinative in the absence of proof on the extent of defendant's knowledge of these matters, for it is the *defendant's* expectation of forum consequences that controls (see Homburger and Laufer, "Expanding Jurisdiction over Foreign Torts: The 1966 Amendment of New York's Long-Arm Statute", 16 Buff. L. Rev. 67, 74). The mere proximity of Robert Packer Hospital to the New York border is not, in these circumstances, sufficient of itself to establish a reasonable expectation on defendant's part that there might be New York consequences, unless it also appeared that defendant had some knowledge thereof.

Nor is it determinative, as the trial court believed, that contact lenses are of a personal nature and it therefore can be foreseen that they will be taken with the owner to home, work or place of travel. If such an approach were correct, then the foreseeable consequences test would lose all substance, for who can say that it is never foreseeable, in this modern age of fast and frequent transportation, that a defect in a readily movable item of a personal nature could have consequences in New York or anywhere else in the world? We would then be left with nothing but a "substantial revenue" test far broader than that which the Legislature intended. Under such a test,

---

3. The amendment was not, it has been noted, "designed to go to the full limits of permissible jurisdiction" (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.10a).

defendant's sales might have been limited to Louisiana, Alabama and Mississippi, but if a Mississippi resident purchased defendant's product in his home State and an injury occurred after he had moved to New York, jurisdiction would obtain. In our view, such a New York consequence would have to be regarded as fortuitous, and not much more so than in the present case in the absence of proof as to defendant's knowledge of Robert Packer Hospital's precise location and the scope of its operations. We, therefore, feel that the matter must be remanded for a jurisdictional hearing on the factual questions heretofore indicated.

The order should be reversed, on the law and the facts, and the matter remitted to Special Term for further proceedings not inconsistent herewith, without costs.

STALEY, JR., J. P., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Order reversed, on the law and the facts, and matter remitted to Special Term for further proceedings not inconsistent herewith, without costs.