Katherine Sales and Sourcing, Inc., individually, For itself and on behalf of nominal, defendant, Zingarr Sales and Marketing, LLC, Plaintiff,

against
Robert Fiorella, Marty Young, and Joel Cooperman, Defendants. Zingarr Sales and Marketing, LLC, Emily Gottschalk and TGG Direct, LLC, Nominal Defendants.


612357-15

Law Offices of Lawrence A. Beckenstein, P.C.
Attorneys for Plaintiff
320 East 65th Street, Suite 619
New York, New York 10065
Silverman Acampora, LLP
Attorneys for Plaintiff
100 Jericho Turnpike, Suite 300
Jericho, New York 11753
Jakubowski, Robertson, Maffei, Goldsmith & Tartaglia, LLP
Attorneys for Defendant Robert Fiorella
969 Jericho Turnpike St. James, New York 11780


Elizabeth H. Emerson, J.

Upon the following papers read on this motion to dismiss and cross-motion to amend ; Notice of Motion and supporting papers 7-13 ; Notice of Cross Motion and supporting papers 18-37 ; Answering Affidavits and supporting papers 39-41 ; Replying Affidavits and supporting papers 39; 41 ; it is,
ORDERED that the motion by the defendant Robert Fiorella for an order dismissing the complaint insofar as it is asserted against him is granted; and it is further
ORDERED that the cross motion by the plaintiff for leave to serve and file a second amended complaint is denied.
The plaintiff, Katherine Sales and Sourcing, Inc. ("Katherine Sales") is a New York corporation whose principal place of business is in Hauppauge, New York. Katherine Sales owns a 50% interest in nominal defendant Zingarr Sales and Marketing, LLC ("Zingarr"), a New Jersey limited liability company that is authorized to do business in New York. Zingarr has offices in both Cherry Hill, New Jersey, and Hauppauge, New York. The other 50% owner of Zingarr is the nominal defendant Emily Gottschalk. Gottschalk also owns and manages the nominal defendant TGG Direct, LLC ("TGG"), a New Jersey limited liability company with offices in Cherry Hill, New Jersey. She and non-party Arthur Danzinger are co-managers of Zingarr. Danzinger is also the president and a shareholder of Katherine Sales. Gottschalk's office is in Cherry Hill, New Jersey, and Dazinger's office is in Haupauge in New York. The defendant Robert Fiorella is a resident of the State of California, where he maintains an office.
Zingarr was formed in May 2013. It is in the business of developing, manufacturing, and selling consumer goods and products to big-box retail stores, on-line retailers and wholesalers who sell to customers throughout the country. One of Zingarr's products is the RealPad, a computer tablet for senior citizens manufactured, marketed, and sold under license from AARP. In early May 2014, Gottschalk asked Fiorella, one of her business acquaintances, to analyze the business model for the RealPad. Fiorella agreed to provide consulting services to Zingarr, which included, inter alia, financial modeling and advice on how to obtain financing for the RealPad. Gottschalk represented to Danzinger that Fiorella was initially willing to work for Zingarr without any compensaiton in the hope that he would be hired at a later date. Between May and December 2014, Fiorella performed services for Zingarr, Gottschalk, TGG and other New Jersey companies owned by Gottschalk unrelated to Zingarr. The record reflects that Fiorella performed such services from his office in California and that he never came to New York to perform any services for Zingarr, Gottschalk, or any of her other companies. On December 23, 2014, Fiorella sent an invoice to Gottschalk in New Jersey for services rendered to Zingarr for the RealPad between May and December 2014. Gottschalk approved the invoice and submitted it to the plaintiff with a demand that Zingarr pay the invoice immediately. It has not been paid, but the Special Master appointed by this court in a related action (Katherine Sales & Sourcing, Inc. v Emily Gottschalk, et al., Index No 069365-14) has reserved $220,000 from Zingarr's cash reserves for contingent payment of Fiorella's invoice. 
The plaintiff commenced this derivative action in November 2015 on behalf of itself and [*2]Zingarr. The gravamen of the amended complaint is that Gottschalk, Fiorella, and the other defendants engaged in a scheme to defraud Zingarr by submitting fraudulent and inflated bills for services rendered to Zingarr and to divert contracts for the RealPad and other Zingarr products to TGG. Fiorella moved to dismiss the complaint insofar as it is asserted against him for failure to state a cause of action (CPLR 3211 [a] [7]) and for lack of personal jurisdiction (CPLR 3211[a] [8]). The jurisdictional issue was referred to a hearing, which was held on July 26, 2017. 
To successfully oppose a pre-answer motion to dismiss a complaint pursuant to CPLR 3211 (a) (8), the plaintiff need only make a prima facie showing that personal jurisdiction exists (Bill-Jay Mach. Tool Corp. v Koster Indus., Inc., 29 AD3d 504, 505). The facts alleged in the complaint and affidavits in opposition to the motion are deemed true and construed in the light most favorable to the plaintiff. All doubts are resolved in favor of the plaintiff (see, Weitz v Weitz, 85 AD3d 1153, 1154). However, the plaintiff may not rely on conclusory statements without any supporting facts. Such allegations lack the factual specificity necessary to confer jurisdiction (Biz2Credit, Inc., v Kular, US Dist Ct, SDNY, May 21, 2015, Ramos, J. [ 2015 WL 2445076], at *3 [and cases cited therein]). Applying these principles, the court finds that the plaintiff has failed to established, prima facie, that the court has jurisdiction over the defendant Robert Fiorella. 
CPLR 302 (a) (1) permits the New York courts to exercise personal jurisdiction over a nondomiciliary who transacts any business within the state if the plaintiff's claim arises from the transaction of such business (Opticare Acquisition Corp. v Castillo, 25 AD3d 238, 243; Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C302:6). Thus, the first requirement is that there be a transaction of business within New York (Opticare, supra at 243). What constitutes the transaction of business has not been precisely defined, but it is clear that a single act may constitute a transaction as long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted (Id. at 243). The clearest case in which New York courts have CPLR 302 jurisdiction occurs when a defendant is physically present in New York at the time the contract establishing a continuing relationship between the parties was negotiated and made and the cause of action arose out of such oontract (George Reiner & Co. v Schwartz, 41 NY2d 648, 653). Courts are generally loathe to uphold jurisdiction under the transaction-of-business prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant (see, Patel v Patel, 497 F Supp 2d 419, 428 [EDNY]).
Although Fiorella had an ongoing relationship with Gottschalk and Zingarr, the record reflects that Fiorella never entered the State of New York to negotiate their oral consulting agreement, to complete its performance, or for any reason other than to visit his family in Buffalo for Christmas in 2014. Fiorella's only contacts with New York directly relating to the agreement were telephone calls and e-mails with Danzinger, who is located in Hauppauge. Although such contact can, in rare cases, constitute "transacting business" in the state if the defendant actively projects himself into New York to conduct business transactions (Worldwide Futgol Assocs., Inc. v Event Entertainment, Inc., 983 F Supp 173, 177 [EDNY], citing Parke-Bernet Galleries, Inc. v Franklyn, 26 NY2d 13), such is not the case here. The record reflects that Fiorella's business relationship was with Gottschalk and Zingarr and that his performance under their consulting agreement occurred outside of New York in California. Any east-coast activities resulting from that agreement were performed by Danzinger in New York or by Gottschalk in New Jersey (see, [*3]Biz2Credit, Inc., v Kular, supra at *5-6). The record also reflects that Fiorella worked under Gottschalk's direction for Zingarr and Gottschalk's other companies, which were located in New Jersey, and that his contacts with Danzinger in New York were incidental to the work that he was performing for Gottschalk. The record further reflects that it was Danzinger who initiated those contacts and that Fiorella was returning his telephone calls or responding to his e-mails. Moreover, while Fiorella had two RealPads sent to Danzinger in Hauppauge, they were sent at Danzinger's request. The court finds that, under these circumstances, Fiorella did not project himself into ongoing New York commerce, thereby purposely availing himself of the business privileges and protections of the State (see, Wego Chemical & Mineral Corp. v Magnablend Inc., 945 F Supp 2d 377, 384 [and cases cited therein], see also, Biz2Credit, Inc., v Kular, supra at *5-6, n 9).
CPLR 302 (a) (2) permits the New York courts to exercise personal jurisdiction over a nondomiciliary who commits a tortious act within the State either in person or through an agent. To confer jurisdiction, court typically require that the defendant be physically present in New York while committing the tortious act (Id. at *7). It is undisputed that Fiorella never entered the State to negotiate the agreement, to complete its performance, or for any work-related reason. However, personal jurisdiction may be conferred under this section on an out-of-state defendant based on acts taken by an agent or co-conspirator in New York (Id.). The plaintiff alleges that Fiorella and Gottschalk were co-conspirators. To allege jurisdiction under a conspiracy theory, the plaintiff must establish (1) that the out-of-state co-conspirator had an awareness of the effects of his activity in New York, (2) that the New York co-conspirator's activity was for the benefit of the out-of-state co-conspirator, and (3) that the New York co-conspirator acted at the behest of, on behalf of, or under the control of the out-of-state co-conspirator (Id. at *8; see also, Lawati v Montague Morgan Slade Ltd., 102 AD3d 427, 428).
The record reflects that Gottschalk was located in and worked out of New Jersey, not New York. She, therefore, was not a New York co-conspirator. Moreover, the plaintiff's contention that she acted at the behest of, on behalf of, or under the control of Fiorella is belied by the record, which reflects that Fiorella worked for Zingarr and Gottschalk's other companies under Gottschalk's direction. The plaintiff alleges that it was Gottschalk who approved Fiorella's invoice; that it was Gottschalk who decided that TGG would fill AARP's orders for the RealPad instead of Zingarr; and that it was Gottschalk who arranged for the manufacture, production, and sale by TGG of an insect-repellant band to compete with Zingarr's insect-repellant band. Except for approving Fiorella's invoice, these activities benefitted Gottschalk and TGG, not Fiorella. The court finds that, under these circumstances, the plaintiff has failed to establish that Fiorella and Gottschalk were co-conspirators.
CPLR 302 (a) (3) permits the New York courts to exercise personal jurisdiction over a nondomiciliary who commits a tortious act outside the State that causes injury to a person or property within the State. Assuming that the plaintiff has viable tort claims, the plaintiff does not allege that it has sustained any injury other than financial loss. The situs of such a nonphysical commercial injury is the place where the original events that caused the injury took place, in this case California and New Jersey, not where the resultant monetary loss occurred (see, Polansky v Gelrod, 20 AD3d 663, 664-665; American Para Professional Systems, v Labone, Inc., 175 F Supp 2d 450, 455 [EDNY]). The mere fact that the economic consequences of what transpired in California and New Jersey may be felt in New York due to the fortuitous location of the plaintiff in New York is [*4]not a sufficient basis for jurisdiction under CPLR 302 (a) (3) (Id.).
In view of the foregoing, the motion by Fiorella for dismissal of the complaint insofar as it is asserted against him is granted. The cross motion for leave to serve and file a second amended complaint is denied. The conclusory allegations of the second amended complaint lack the factual specificity necessary to confer jurisdiction (Biz2Credit, Inc., v Kular, supra at *3).
DATED: September 8, 2017
Hon. Elizabeth H. Emerson
J.S.C.